# Richmond

SHRINERS HOSPITAL FOR CRIPPLED CHILDREN, A CORPORATION, AND BOYS' HOME, INCORPORATED v. CITIZENS NATIONAL BANK, COVINGTON, VIRGINIA, A CORPORATION, EXECUTOR AND TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF DR. HARRY B. JUSTICE, DECEASED, ET AL.

April 23, 1956.

Record No. 4506.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Hale Collins* (*John T. Delaney* on brief), for the appellants.

*R. B. Stephenson* and *Edmund Revercomb* (*C. S. Minter* and *C. W. Allison, Jr.*, on brief), for the appellees.

EGGLESTON, J., delivered the opinion of the court.

This appeal arises out of a suit in equity brought by Citizens National Bank, Covington, Virginia, as executor and trustee under the last will and testament of Dr. Harry B. Justice, deceased, against the beneficiaries under the will and heirs of the testator, praying for the construction of the will and the direction and guidance of the court in the administration of the estate. From certain decrees which adversely affect their interests two of the beneficiaries, Shriners Hospital for Crippled Children and Boys' Home, Incorporated, have appealed.

On November 1, 1952, Dr. Justice, a resident of Covington, died leaving a will dated June 17, 1952, under which he appointed Citizens National Bank as his executor and as trustee of certain trusts therein set up. His wife, Grace V. B. Justice, had died in August, 1951. There were no children of the marriage.

By an agreement dated May 13, 1938, Grace V. B. Justice had established a trust for herself to be administered by Citizens National Bank and Dr. Justice as trustees. The agreement provided that she was to have the income from the trust for her life and in the event her husband survived her, he was to have the income therefrom for his life, and that "at his death the then remaining corpus of the trust estate shall at the expiration of one year from the probate of the will of H. B. Justice be paid over, assigned and conveyed in the manner herein directed by the corporate trustee to such person, persons or corporations as the said H. B. Justice may by his last will and testa-

ment direct and in such proportions as is in said will directed."

In his will Dr. Justice disposed of his individual estate of the appraised value of $274,682.43, and the corpus of the trust estate established by his wife for the appraised value of $119,244.79. The will contains twenty-one articles which are denominated in that instrument and throughout the record and briefs as "Clauses." We will use the same terminology. After providing for the payment of his debts, funeral and testamentary expenses, the will disposes of a large number of items of real estate, cash, stocks, bonds, articles of household furniture and personal belongings to more than twenty beneficiaries. The devises and bequests are mostly in fee, but there are a number of life estates with remainders and reversions. A number of trusts to be administered by the trustee bank are established.

The main controversy in the present appeal turns upon the interpretation of Clauses Fifteenth, Seventeenth and Nineteenth, the pertinent portions of which read thus:

"FIFTEENTH: After satisfying all bequests and devises made by me in this my Last Will and Testament to specifically named person or persons, corporations, associations, hospitals or institutions, I give, devise and bequeath to the Citizens National Bank, Covington, Virginia, whom I hereby appoint trustee, all the rest, residue and remainder of my property, real, personal and mixed, including intangibles and my trustee shall at such time or times as it in its sole discretion shall deem advisable sell said property, either at public or private sale, whichever in its opinion is conducive of bringing the highest price and after the payment of all costs and expenses in connection with such sale or sales, including any and all necessary legal expenses in connection therewith, shall divide the net proceeds from said sale or sales equally between the Boys' Home, Incorporated of near Covington, Virginia, or its successor, and the Hospital for Crippled Children (*sic*), a corporation, situated in Philadelphia, Pennsylvania. * * * All of the property real, personal and mixed including intangibles which under other clauses of this my Last Will and Testament revert to and become a part of Clause Fifteenth of this my Last Will and Testament, I give, devise and bequeath to the trustee herein appointed and my trustee shall within two years after receiving any property, by reason of reverting to Clause Fifteenth, sell the same either at public auction or privately and after deducting all costs and expenses of sale, divide the net proceeds equally between the Boys' Home of Covington, Virginia, or its successor, and the Shriners Hos-

pital for Crippled Children, a corporation situated in Philadelphia, Pennsylvania. * * *

\* \* \* \* \* \* \*

"I further give, devise and bequeath all of the rest, residue and remainder of the Grace V. B. Justice Trust dated May 13, 1938, and not devised or bequeathed by me to specifically named person or persons, corporation or corporations, associations or institutions or institution to the Citizens National Bank, Covington, Virginia, Trustee, to become a part of this clause (Fifteenth) and to be distributed to the Shriners Hospital for Crippled Children of Philadelphia, Pennsylvania, and the Boys' Home, Incorporated, of Covington, Virginia, or its successor in the same manner and under the same terms and conditions as the rest, residue and remainder of my estate not included in the Grace V. B. Justice Trust.

\* \* \* \* \* \* \*

"SEVENTEENTH: My trustee shall, out of my general fund, pay any and all state and federal inheritance taxes, estate, gift and/or succession taxes assessable against the estate of any of the beneficiaries under this will, chargeable to them by reason of any bequest under this will, which payment shall be a first charge against my estate. * * *

\* \* \* \* \* \* \*

"NINETEENTH: In the event my estate is not sufficient to pay all the taxes as hereinbefore provided, and the various bequests made by me in this my Last Will and Testament, then and in that event the various bequests and trusts shall be reduced proportionately."

Both sides agreed before the lower court, as they do before us, that the individual estate of Dr. Justice is sufficient to pay his debts, inheritance taxes and costs of administration, but is insufficient to pay these items as well as the full amount of the devises, bequests and pecuniary legacies.

In one of the decrees appealed from the lower court said: "(T)he court being of the opinion that under Clause Fifteenth of the will * * * , which is the residuary clause * * * , the residue of the Grace V. B. Justice Trust, described in said Clause Fifteenth, and over

which Dr. H. B. Justice had a general power of appointment by his will under the agreement creating said trust, was blended with the estate of Dr. H. B. Justice, and is subject to the payment of all pecuniary legacies made by him, and all taxes against his estate, and all debts and costs of administration of his estate; it is therefore adjudged, ordered and decreed that the said residue of the Grace V. B. Justice Trust as set out in Clause Fifteenth of said will and the individual estate of Dr. H. B. Justice, shall be and the same are hereby combined and treated as one estate or fund, and after satisfying and paying therefrom all specific devises and legacies of his individual estate and all pecuniary legacies made and bequeathed by said will, the residue of such combined estate or fund shall be used for, and shall be the primary fund for the payment of, all taxes, state and federal, against the estate of Dr. H. B. Justice, or against the interest of any beneficiary under his will, and all debts and costs of administration of his estate."

The appellants insist that since the testator's individual estate is sufficient to pay his debts, inheritance taxes and costs of administration, none of the appointive property may be used for that purpose.

The appellees concede that ordinarily this is true. But they correctly point out that one who is given a general power of appointment by will, as is the case here, may execute that power in such a manner as to make the appointive property liable for his debts. He may do this by appointing the property to his executor for the benefit of his own estate. *Tuell* v. *Hurley*, 206 Mass. 65, 91 N. E. 1013, 1014; *In re Stannert's Estate*, 339 Pa. 439, 15 A. 2d 360, 362. But, as is said in the latter case, "such an intent must be plainly expressed or clearly implied from the appointment." Similarly, he may provide in his will that such appointive property is to constitute a fund or a part of a fund for the payment of debts, inheritance taxes and pecuniary legacies.

In the present case the appellees contend, and the lower court held, that such is the effect of Clause Fifteenth. The question presented to us, then, is whether this is a proper interpretation of that clause.

Clause Fifteenth contains the residuary clause of the will. In the first sentence the testator devises and bequeaths to the bank as trustee, "After satisfying all bequests and devises made by me * * * , all the rest, residue and remainder of *my property*" (italics supplied), with power and direction to the trustee to sell the same and divide the net proceeds equally between the appellants, the Boys' Home, Incorpo-

rated, and the "Hospital for Crippled Children." [1] Clearly, the italicized words "my property" in the phrase above are intended to refer to the testator's individual estate.

Since the residue is devised and bequeathed "after satisfying all bequests and devises," it is clear that the gift of the residue to the appellants is subject to the payment or satisfaction of bequests, devises and legacies. Furthermore, since such residue constitutes the net corpus after the payment of all debts, taxes and expenses of administration, it is also clear that the gift to appellants of such residue is likewise subject to the payment of these latter items. *Rosenberger v. Rosenberger*, 184 Va. 1024, 1038, 37 S. E. 2d 55, 61.

The testator next devises and bequeaths to the trustee bank "All of the property * * * which under other clauses of this my Last Will and Testament revert to and become a part of Clause Fifteenth," with like directions that such property be sold and the net proceeds divided equally between the appellants, the Boys' Home, Incorporated, and the Shriners Hospital for Crippled Children.

It is agreed that three of these reversionary or remainder interests are in property which the testator owned individually, namely, (1) Real estate devised to Mary Fridley MacFarland for life under Clause Twelfth (g); (2) Certain stocks bequeathed to Scott and Ruth Nesbit for life under Clause Twelfth (j); and (3) Certain real estate devised to Eva Haynes for life under Clause Twelfth (k).

Since these three reversionary or remainder interests are a part of testator's individual estate, the gift thereof to appellants is subject to the payment of debts, taxes and costs of administration. But there is nothing in the language used in disposing of these items, as there is in the first sentence of Clause Fifteenth, which indicates that the gift of such reversionary or remainder interests to appellants is subject to the payment of bequests, devises and legacies. Consequently, the gift of such reversionary or remainder interests to appellants and the bequests, devises and legacies to others stand on the same footing, with the result that all must abate ratably to supply any deficiency in the fund necessary to pay the debts, taxes and costs of administration. Indeed, Clause Nineteenth expressly provides that: "In the event *my estate* is not sufficient to pay all the taxes as hereinbefore provided, and the various bequests made by me * * *, then and in that event the various *bequests and trusts shall be reduced proportionately*." (Italics

---

[1] It is agreed, and the lower court held, that the reference here is to the Shriners Hospital for Crippled Children, hereinafter referred to in Clause Fifteenth.

supplied.) Since the testator is here referring to his individual estate, the "bequests and trusts" here mentioned are those created out of such individual estate. They do not include those created out of the appointive property.

The last of the reversionary items referred to in Clause Fifteenth is in certain real estate devised in Clause Fourteenth to Cecil C. Collins and his wife, Marie Wyatt Collins, for "their natural lives," and which the testator says is a part of the property which he is "given authority under the Grace V. B. Justice Trust Agreement * * * to dispose of" by his last will and testament. This latter reversionary interest is in the same category as the other appointive property devised and bequeathed to appellants under the last paragraph of Clause Fifteenth and now to be considered.

In the last paragraph of Clause Fifteenth the testator gives, devises and bequeaths "all of the rest, residue and remainder of the Grace V. B. Justice Trust * * * , and not devised or bequeathed by me to specifically named" persons, corporations or institutions, to the bank trustee, "to become a part of this clause (Fifteenth) and to be distributed to the Shriners Hospital for Crippled Children * * * and the Boys' Home, Incorporated, * * * in the same manner and under the same terms and conditions as the rest, residue and remainder of my estate not included in the Grace V. B. Justice Trust."

The appellees insist that a reading of Clause Fifteenth as a whole, in connection with Clause Seventeenth and Nineteenth, shows an intent on the part of the testator to combine or blend the residue of the Grace V. B. Justice trust with the residue of the testator's individual estate, thereby creating a fund out of which should be paid debts, taxes, costs of administration, devises and legacies, leaving the residue to go to appellants.

We do not agree with this contention. It should be remembered that the appointive trust property was never testator's property or a part of his estate. It is well settled that a power of appointment does not vest ownership of the property in the donee of the power. The property remains the property of the donor of the power, and the donee in the execution of the power is considered to be a mere agent of the donor. 72 C. J. S., Powers, § 31, pp. 426, 427; 41 Am. Jur., Powers, § 70, p. 857. As was said in *Davis* v. *Kendall*, 130 Va. 175, 204, 107 S. E. 751, a power is " 'an authority enabling one person to dispose of the interest which is vested in another.' The appointee takes title from the donor of the power," and the donee is merely the

conduit through which the title passes from the donor to the appointee.

"(T)he fact that the testator disposed of his own separate estate and the estate over which he had the power of appointment in the same manner and on the same trusts does not indicate an intention to blend the estates for all purposes so as to subject the appointive estate to the payment of the testator's individual debts." 72 C. J. S., Powers, § 32, p. 430. See also, *In re Stannert's Estate, supra* (15 A. 2d, at page 362).

It is clear from a reading of the will before us that the testator knew and appreciated the difference between his individual estate and the trust estate over which he had the power of appointment. With particular detail he disposes of a large number of items of real estate, securities, articles of household furniture and personal belongings. In doing so he carefully describes the items of property owned by him individually as "belonging to me," or "owned by me," or "my stock." Items included in the trust estate are carefully identified as those which he had "the right to dispose of" under the terms of the trust for the benefit of his wife. He distinguishes between debts "owing to me," or "due to me," as contrasted with those owing to or "due to" the Grace V. B. Justice trust.

In the first paragraph of Clause Fifteenth the testator refers to "my property" as the basis of the residuary clause. In the last paragraph of the same clause he clearly points to the "rest, residue and remainder of the Grace V. B. Justice Trust," which he directs to become a part of Clause Fifteenth and to be distributed to appellants in the same manner and under the same terms and conditions "as the rest, residue and remainder of *my estate* not included in the Grace V. B. Justice Trust." (Italics supplied.)

There is undisputed evidence that after the establishment of the trust, Dr. Justice carefully kept separate the property which was set aside for that purpose and that which he owned individually. When he purchased additional stock for the trust, as he sometimes did, he was careful to have this registered in the name of the trustees. All of this goes to show that the testator clearly understood the difference between property which he owned individually and that over which he had a power of disposition, and that he intends under Clause Fifteenth to treat and dispose of these two classes of property in a different manner.

Nor do we agree with the argument of the appellees that the pro-

vision in Clause Seventeenth which directs that the trustee shall "out of my general fund, pay any and all state and federal inheritance taxes," shows that the appointive property is to be used for this purpose. On the contrary, we think that the use of the words "my general fund" indicates that these items are to be paid from the testator's individual estate.

As was said in *In re Stannert's Estate, supra,* the direction by the testatrix that her debts should be paid " 'out of my estate,' without mention of the appointive estate, must be construed to refer only to her individual estate in the absence of a contrary intention elsewhere manifested." 15 A. 2d, at page 362.

Moreover, the language in Clause Nineteenth that, "In the event *my estate* is not sufficient to pay *all the taxes*" (italics supplied), clearly indicates that his individual estate is the primary fund for that purpose.

In short, we are of opinion that in the final paragraph of Clause Fifteenth, in which the testator devises and bequeaths the residue of the Grace V. B. Justice trust to the bank as trustee, "to become a part of this clause (Fifteenth) and to be distributed" to appellants "in the same manner and under the same terms and conditions as the rest, residue and remainder of my estate not included in the Grace V. B. Justice Trust," the testator intends that the residue of his wife's trust property is to be sold and the net proceeds divided between the two appellants, in the same manner and upon the same terms which he has provided for these beneficiaries under the preceding provisions in Clause Fifteenth. The testator is the mere conduit for passing the appointive property to the bank as trustee for appellants.

The same is true of the reversionary interest in the appointive property devised to Cecil C. Collins and wife, and previously discussed.

There is no indication in Clause Fifteenth, or in any other part of the will, of an intent that the proceeds of the sale of the appointive property are to be used for the payment of taxes, debts of the testator, devises, bequests, legacies, and costs of administration. Consequently, the proceeds of the sale of such appointive trust property go to the appellants without abatement for contribution to such items. *Slayton* v. *Fitch Home,* 293 Mass. 574, 200 N. E. 357, 360, 104 A. L. R. 669.

■ The appellees assign cross-error to the action of the trial court in permitting appellants to amend their original answer and assert that the appointive property could not be used for the payment of inheri-

tance taxes. The argument is that the appellants made no such contention in their original answer and not until the trial court had indicated that its ruling on the question would be adverse to them.

There is no merit in this cross assignment of error. In the first place, the permission of an amendment to the answer was within the sound discretion of the trial court. Rule 2:12, applicable to equity practice, provides that "Leave to amend shall be liberally granted in furtherance of the ends of justice."

But aside from this, it was not necessary that this question be raised in appellants' answer. The adjudication of the trial court in improperly interpreting the will and holding that such appointive property was liable for such taxes was a ruling which the appellants had the right to challenge by a proper assignment of error. This they have done.

In Clause Twentieth the testator bequeaths to Virginia Cline and G. C. Fawley "my stock in the American Brake Shoe Company." In the Twenty-first Clause he bequeaths to Dr. George Geckler "my stock in the Chase National Bank of New York." It developed that the testator owned individually 302 shares of American Brake Shoe Company, common, and 20 shares of American Brake Shoe Company preferred. The Grace V. B. Justice trust owned 25 shares of American Brake Shoe Company preferred. Similarly, the testator owned individually 100 shares of Chase National Bank stock and his wife's trust owned 75 shares of the latter stock.

The lower court held and decreed that under these clauses the respective legatees are entitled both to the stock which the testator owned individually and that which was owned by his wife's trust and over which he had the power of appointment. Apparently this ruling was based upon the theory that each bequest of the stock operates as an execution of the power of appointment within the meaning of Code, § 64-67. That section provides:

"*Devise or bequest as execution of power to appoint.*—A devise or bequest shall extend to any real or personal estate, as the case may be, which the testator has power to appoint as he may think proper and to which it would apply if the estate were his own property, and shall operate as an execution of such power, *unless a contrary intention shall appear by the will.*" (Italics supplied.)

The appellants have challenged this ruling in so far as it holds that the legatees are entitled to the stock owned by the wife's trust.

What has been previously said as to the difference between the

property which the testator owned individually and that over which he had a power of appointment, and his appreciation of such difference, applies here. When the testator referred to "my stock in the American Brake Shoe Company" and "my stock in the Chase National Bank of New York," he meant exactly and literally what he said, that is, the stock which he owned individually and not that over which he had a power of appointment. It clearly appears from the will and from the evidence that the testator never considered the property of the Grace V. B. Justice trust as his property. He did not regard the stock owned by the trust as "my stock."

In Clause Eleventh he bequeaths to John Harrington certain stock which was owned by his wife's trust. It is significant that he does not refer to it as "my stock." On the contrary, he carefully points out that, "This stock is in the trust established by Grace V. B. Justice for herself and me, dated May 13, 1938, under which trust I was given the right to dispose of by will anything remaining in said trust at the time of my death."

Under the plain meaning of Code, § 64-67, a devise or bequest does not operate as an execution of the power of appointment where "a contrary intention shall appear by the will." Such is the case here.

Consequently, we are of opinion that the trial court erred in holding that the legatees, Cline, Fawley and Dr. Geckler, are entitled to the stock in the Grace V. B. Justice trust.

Error is assigned to the ruling of the trial court that the pecuniary legacies should bear interest beginning one year after the date of the testator's death. In view of our disposition of the main questions presented, it would seem that in so far as these appellants are concerned this ruling is moot.

The decrees appealed from are reversed and the cause is remanded for further proceedings in conformity with the views here expressed.

*Reversed and remanded.*