342 So.2d 996 (1977)
In re ESTATE OF Gertrude M. WYLIE, Deceased.
No. 75-1746.
District Court of Appeal of Florida, Fourth District.
February 4, 1977.
Jerome J. Bornstein, of Bornstein & Petree, Orlando, for appellants Patricia Wylie Yarnell and Donald M. Wylie.
Eli H. Subin, of Subin Shams Rosenbluth & Moran, Orlando, for appellees Lee Jay Colling and Betty Otto.
CROSS, Judge.
Appellants, Donald M. Wylie and Patricia Wylie Yarnell, appeal an order entered in favor of appellees, Betty S. Otto and Lee Jay Colling, Co-Executors of the Estate of Gertrude M. Wylie, deceased, dismissing appellants' amended petition to set aside an order discharging the Co-Executors of the Wylie Estate and discharging a Rule Nisi. We reverse.
On August 31, 1964 Donald M. Wylie died leaving a last will and codicil thereto dated August 19, 1957 and December 12, 1963, respectively.
In Article VII, paragraph (a) of his last will, Donald M. Wylie created a testamentary trust in the following manner:
"I give, devise and bequeath said fraction of said rest, residue and remainder of my estate in trust to hold, manage, invest and reinvest the same and to pay the entire net income from the time of my death, monthly or quarterly, as my executors and trustees shall from time to time determine, to my said wife, Gertrude M. Wylie, during her life and upon her death, to distribute the principal of said trust and the income for the period between the last income distribution date and the date of my wife's death, to or for the benefit of such person or persons or the estate of my said wife, in such amounts and proportions and upon such trusts, terms, conditions and limitations as my wife shall appoint by will made *997 after my death, which will specifically refers to the power herein given to my wife ..."
Appellee, Lee Jay Colling, was the attorney for Gertrude M. Wylie, the wife of Donald M. Wylie, and drafted her last will and codicil. In accordance with the codicil to her will, Gertrude M. Wylie directed:
"Under ARTICLE SEVENTH of the Will of my husband, DONALD M. WYLIE, which was dated August 19, 1957, and admitted to probate in the County Judge's Court of Dade County, Florida, File No. 64446-A, I was given a power of appointment. I now exercise it and direct that the principal and undistributed income, if any, of the trust be appointed as follows:
"A. I give, devise and bequeath unto my Trustees hereinafter named all of the principal and undistributed income, if any, over which I have power of appointment... ."
Gertrude M. Wylie designated Betty S. Otto and Lee Jay Colling as Trustees of the trust created by her last will and codicil.
Gertrude M. Wylie died on May 20, 1969, and her will and codicil was admitted to probate and letters testamentary were issued to Betty S. Otto and Lee Jay Colling as Co-Executors of the Estate of Gertrude M. Wylie, deceased. Mr. Colling was employed by the Co-Executors of the estate to represent the Co-Executors and to serve as attorney for both the Co-Executors and the Estate of Gertrude M. Wylie.
Following the issuance of the letters testamentary to Betty S. Otto and Lee Jay Colling, as Co-Executors of the Estate of Gertrude M. Wylie, these Co-Executors prepared and executed an estate inventory, the aggregate value of the assets of the Estate of Gertrude M. Wylie reported therein as $136,263.96. On December 25, 1969 this original inventory was increased and amended by a savings account in the amount of $7,094.39, which had been previously unknown.
In the interim between the filing of the original inventory and the amendment pertaining to the savings account, Betty S. Otto and Lee Jay Colling executed and filed a document designated "Acceptance of Trusteeship." In this document they recited that Gertrude M. Wylie had a general power of appointment granted to her under the will of her late husband which she had exercised, appointing that the property over which the said power of appointment was exercised be distributed to Betty S. Otto and Lee Jay Colling as Trustees, and approximately nine months later on May 26, 1970 Betty S. Otto and Lee Jay Colling executed a second amendment to the inventory of Gertrude M. Wylie's Estate.
The second Amendment stated that they were appointed Co-Executors of the Estate of Gertrude M. Wylie, and they again recited that Gertrude M. Wylie had exercised power of appointment granted to her under her husband's will; that they acting both as Co-Executors and Trustees of the testamentary trust carried under the will of Gertrude M. Wylie did not take possession of any of the assets included in the trust established by her husband until September 26, 1969, and concluded with a listing of the assets in the Trust of Donald M. Wylie amounting to slightly more than one million dollars. Adding this amount to the total of the inventory of Gertrude M. Wylie's estate increased the assets from $143,358.35 to $1,149,783.87.
Based upon the new total inventory in the amount of $1,149,783.87, the appellees, Betty S. Otto and Lee Jay Colling, filed a petition for allowance of executors' fees in the sum of $28,662.24 each, and a second and additional fee for Mr. Colling as attorney in the sum of $29,567.24. These fees were approved by the court. Payment was accordingly made to Betty S. Otto as Co-Executrix in the amount of $28,662.54 and to Lee Jay Colling as Co-Executor in a like amount, and attorneys' fees in the amount of $29,567.24, making an aggregate amount of $58,329.48 paid to Mr. Colling.
On April 25, 1974 an order was entered discharging the Co-Executors and closing the Estate of Gertrude M. Wylie.
*998 On April 16, 1975, upon the petition of Donald M. Wylie and Patricia W. Yarnell, the court issued a Rule Nisi to Betty S. Otto and Lee Jay Colling for them to show cause why the Estate of Gertrude M. Wylie should not be reopened and the matter of executors' and attorneys' fees be redetermined.
On September 4, 1975 the court entered an order discharging the Rule Nisi and dismissed the amended petition. This appeal then followed.
We have for determination the following issue, which was stipulated by the parties:
"Was it erroneous, improper or unlawful to include in the estate inventory of the Gertrude M. Wylie Estate, and base the computation and allowance of executors' fees and attorneys' fees thereon, the value of the Donald M. Wylie Trust over which Gertrude M. Wylie had a general power of appointment which she exercised by her last will codicil in favor of her testamentary trustees, and the assets of which were actually distributed and paid over to the trustees under the will of Gertrude M. Wylie, deceased?"
The issue presented to this court is one of first impression in the State of Florida. We must, therefore, deal with the manifold problems of substantive law as they relate to the interest of the donee of a power of appointment.
The power of appointment is a unique legal creature. It is never created by implication or by operation of law, but only by a deliberate act. The law calls the creator of the power the donor, the person who is permitted to exercise the power the donee, and the person in whose favor the power is exercised the appointee.
Today, estate planners include a power of appointment in a will as a common practice to qualify for the marital deduction under the provisions of the Internal Revenue Code. However, historically, the power of appointment dates back before the Statute of Uses and Wills. The power of appointment was developed in chancery through the vehicle of the use. Basset's Case, 2 Dyer, 136a, 73 Eng.Rep. 297 (1557); 4 Holdsworth, History of English Law, 474 (1926). It was chiefly utilized in those places where land was not divisible to make it, in effect, divisible. Later, in the XVIII and XIX centuries in England, the general power was used by conveyancers to give flexibility to the land law system, and also to skirt other inconvenient rules of law, particularly those involving dower and curtesy and the incapacity of married women to convey. 7 Holdsworth, History of English Law, 181 (1926).
The main strut in the ancient superstructure of power was "relation back doctrine." This doctrine was expressed in two forms (1) that the appointee of the property takes directly from the donor of the power or (2) that the instrument exercising the power is to be read as part of the instrument creating the power. The exercise of the power of appointment was used as a shifting event, much as any other shifting executory interest was viewed. The "relation back doctrine" is nowhere better described than in the Restatement of the Law of Property:
"The donee of the power of appointment likewise has the power to create interest in other persons; but it is the underlying dogma of the law of powers of appointment that such interest constitute transfers from the donor of the power, not from the donee." 3 Restatement of Property (1940) § 318 Comment (b).
The doctrine of relation back, minimizing as it does the importance of the donee of the power, is the mainstay for that rule of law which treats the donee as a mere agent with no property interest. Although under attack by many commentators in the field of future interests, the prevailing view still remains that a general power of appointment is a mere mandate or authority to dispose of property and not an interest in property itself. Holzback v. United Virginia Bank, 216 Va. 482, 219 S.E.2d 868 (Sup. Ct.Va. 1975); In re Von Der Hallen's Trust, 9 Misc.2d 927, 169 N.Y.S.2d 698 (1957); Commonwealth v. Carter, 198 Va. 141, 92 S.E.2d 369 (1956); Tax Commission of Ohio v. Oswald, 109 Ohio St. 36, 141 N.E. 678 *999 (1923); Davis v. Kendall, 130 Va. 175, 107 S.E. 751 (1921); Shattuck v. Burrage, 229 Mass. 448, 118 N.E. 889 (1918); Supreme Colony United Order Pilgrim Fathers v. Towne, 87 Conn. 644, 89 A. 264 (1914).
Those courts emphasizing the agency aspect of the general power of appointment adhere to the proposition that title to the property concerned remains with the donor until the power has been effectively exercised by the donee, at which time the title passes through the donee as a conduit to the appointee; that a power of appointment does not vest ownership of the property in the donee of the power; the property remains the property of the donor of the power, and the donee in execution of the power is considered to be a mere agent of the donor. Shriners' Hospital v. Citizens National Bank, 198 Va. 130, 92 S.E.2d 503; 72 C.J.S. Powers § 31, pages 426, 427; 41 Am.Jur., Powers § 70, at 857. Other courts have adhered to the proposition that a property which is exposed to the exercise of a power of appointment does not become part of the estate of the donee of the power. Equitable Trust Company v. Snader, 17 Del. Ch. 203, 151 A. 712 (1930); In re: Buck Estate, Del. 1973, 301 A.2d 328.
Those writers extolling the principle that the general power of appointment is an interest in property as opposed to a mandate or an authority to dispose of property, base such reliance upon the fact that the donee of a general power of appointment can appoint to himself if the power is presently exercisable or at least to his estate if the power is testamentary only, state that the power should be treated as an interest in property, and that the general power is but a historical relic that is useless except to evade the rules of law relating to the liabilities and duties of ownership. Depending upon for what purpose they are evaluating the power, some authorities reviewed emphasize the diametrically opposed proprietorship aspect of the general power of appointment. The rights of third parties, such as creditors, spouse and heirs of the donee, claiming against or through the donee of the power, illustrate the interplay between the two concepts. For example, the Internal Revenue Code of 1954, § 2041, treats the donee of a general power as owner for tax purposes; thus, the tax is imposed on the estate of the donor when the power is created by will, and on the estate of the donee when the power is exercised by will. It can readily be seen that whether a general power of appointment is to be viewed as a property interest or as an authority to dispose of the property depends upon the facts of the case, and for what purpose that power is being evaluated.
In the case sub judice, there must be a determination whether the power of appointment bestowed upon Gertrude M. Wylie by her husband created in Mrs. Wylie as donee, an interest in property or merely a mandate or authority to dispose of property. Such determination controls the co-executors' and attorneys' fees which were awarded by the trial court, since these fees were calculated on the value of Mrs. Wylie's estate, which valuation included the assets over which Mrs. Wylie had a general power of appointment. If these assets were to be considered an interest in property, then the fees awarded would stand. However, if Mrs. Wylie's power of appointment was merely an authority to dispose of property, the fees awarded would fall.
We see no compelling reason in this case to depart from those innumerable cases justified by the historical origin of powers of appointment, and we determine that Mrs. Wylie's power of appointment was an authority to dispose of property and not an interest in property. Any contrary determination would do violence to the spirit if not the letter of the law of powers of appointment and would, in effect, further the elimination of one of the most useful tools in estate planning, in addition to giving credence to an unjust method of assessing executor's fee and attorneys' fees.[1]
*1000 Our decision is not based upon an arbitrary choosing between opposed aspects of the general power of appointment, but is based upon the goal to achieve substantial justice.
Accordingly, the order appealed is reversed and the cause remanded for further proceedings consistent with the views herein expressed.
Reversed and remanded.
FOGLE, HARRY W., Associate Judge, concurs.
DOWNEY, J., concurs specially, with opinion.
DOWNEY, Judge, specially concurring.
The issue before this court is whether the property which was the subject of the power of appointment Gertrude M. Wylie exercised was part of her estate. If it was, then the fees the court awarded to the appellees were proper; if it was not, the fees were improper.
The following authorities support a holding that the property subject to the power of appointment in the present case was not part of the estate of Gertrude M. Wylie: United States v. Field, 255 U.S. 257, 41 S.Ct. 256, 65 L.Ed. 617 (1921); In re Baird's Estate, 135 Cal. App.2d 333, 287 P.2d 365 (1955); In re Breault's Estate, 29 Ill.2d 165, 193 N.E.2d 824 (1963); Boston Safe Deposit & Trust Co. v. Johnson, 151 Me. 152, 116 A.2d 656 (1955); Fiske v. Warner, 99 N.H. 236, 109 A.2d 37 (1954); Norris v. Oklahoma Tax Commission, 350 P.2d 246 (Okla. 1960); In re Fenner's Estate, 2 Utah 2d 134, 270 P.2d 449 (1954); 33 C.J.S. Executors and Administrators § 121, pp. 1074-1075.
On the strength of these authorities I concur in the decision to reverse the order under review.
NOTES
[1] Section 733.617, Florida Statutes, effective 1975, alleviates the fee aspect as a problem in the probate of property devised under a general power of appointment. A fee award must be based upon a reasonable fee as opposed to a fee schedule based upon the value of the estate.