FRANK, RICHARD H., Associate Judge.
The instant matter has been in the judicial system for nearly ten years. It was before this court some six or seven years ago, terminating in an opinion, Century Nat’l Bank v. Bryan, 468 So.2d 243 (Fla. 4th DCA 1985), which was reversed in part by the supreme court. Bryan v. Century Nat’l Bank, 498 So.2d 868 (Fla.1986). The litigation trail has been long, arduous and costly. We anticipate that our disposition in this instance will promptly lead to an endpoint. We reverse in part and remand.
We need not recount the historical aspects of the present controversy. The most recent events before the trial court may be summarized as follows: The appel-lee, Sun Bank, acting as the voluntary guardian of the property of the decedent, Camille Bryan, filed its final accounting and petitioned the trial court for discharge from its duties. In its petition, the Sun Bank sought the payment of fees to itself and the attorneys it employed. The residuary legatees of Camille’s estate, Reed H. Bryan, III, Anne Bryan Bell, Camille Bryan Riley, and James H. Bryan, Sr., the appellants, objected to the Sun Bank’s petition. The trial court rejected their challenge and approved the Sun Bank’s requests, with conditions not pertinent to our review. Bryan III, Bell, and Riley, represented separately from Bryan, Sr., have, with Bryan, Sr., raised six issues attributing error to the trial court. We have fully considered each of the points urged upon us, and we find that two of the contentions, common to each of the appellants, require reversal of a portion of the trial court’s order and remand for further proceedings.
The subsidiary facts, pertinent to the order we have reviewed, and essential to our disposition, are set forth in conjunction with our response to the following questions:
Whether the trial court abused its discretion in approving personal representative and attorney’s fees assessed for the administration of the decedent’s house?
and
Whether the trial court abused its discretion in approving personal representative and attorney’s fees assessed for administering money transferred into the decedent’s estate from the Tom Bryan trust?
In 1980, at a time when Camille was subject to a voluntary guardianship, she deeded her home to her grandnephew, Bryan III, for substantially less than its appraised value, in exchange for his $100,-000 promissory note. She died in 1981 and the administration of her estate began in that year. A dispute arose in the probate proceeding as to whether her house was a part of the estate, and ultimately Bryan III initiated an action to quiet title in himself naming Sun Bank as a defendant. Sun Bank counterclaimed seeking to quiet title in the estate. The pivotal question in that litigation — whether judicial approval of the deed had been procured — was answered by the supreme court in favor of Bryan III. The cost of that litigation, properly incurred by Sun Bank as an aspect of its responsibility to preserve the estate, was awarded by the trial court to the attorneys who represented the Sun Bank.
The estate’s federal tax return, filed in 1982, well before the supreme court’s determination of Bryan Ill’s interest in the house, included its value at $100,000 rather than its appraised value of $382,000. The Internal Revenue Service challenged the $100,000 figure claiming it should have been the greater amount. The controversy with the IRS was settled.[1] Thereafter, to *346 pay the federal estate taxes, Sun Bank, which was also acting as the trustee of Camille’s deceased husband’s estate, transferred $243,804 from that estate to Camille’s. On the same day as the transfer of funds into Camille’s estate, Sun Bank drew checks from that account to the IRS and the State of Florida. In February of 1982, Sun Bank amended the inventory of Camille’s probate estate to reflect the receipt of the money from her dead husband’s trust.
The Sun Bank had agreed to serve as personal representative of the estate for three percent of the value of the probate estate's assets up to $500,000 and two percent of the value over $500,000, with a minimum fee of $4,000. Sun Bank’s counsel contracted to represent the Sun Bank, in its capacity as the personal representative, in the customary matters arising from the probate of an estate for an attorney’s fee of three percent of the value of the inventoried probate assets, such fee not to include filing of the federal estate tax return. The agreement also provided that Sun Bank’s attorneys were to be paid one-half of one percent of the gross value of the estate for preparing and filing the federal return. Should the return have to be defended, the attorney’s fee was $125 per hour. In the event litigation grew out of the estate or Camille’s guardianship, such matters would be compensated at the rate of $150 per hour. Two inventories were filed, the first in November of 1981, which included the house at its appraised value of $382,000, and listed the total assets at $554,961.01 and the second, filed in February, 1982, added $243,804, the money transferred into Camille’s estate from the Tom Bryan Trust to pay the estate taxes, which increased the total value of the estate to $798,765.01.
In its petition for discharge, Sun Bank based its fees and those of its attorneys on $798,765.01. This resulted in requests for $23,962.95 compensation for Sun Bank’s attorneys for attending to the ordinary matters of administration, $42,769.44 for the litigation stemming from Camille’s deed to Bryan III, and $20,975 to the Sun Bank for administering the estate. The trial court approved the requested distributions without expressing any findings.
The residuary legatees Contend that the inventoried estate was inflated to increase Sun Bank’s and its attorney’s compensation. Hence, the inclusion of the house in the amended inventory at its appraised value, relied upon by the trial court in rendering the order under review, in spite of the supreme court’s determination confirming title to the property in Bryan III, and the money transferred from the Tom Bryan Trust, lie at the heart of the issues we have considered.
In determining “reasonable” compensation for a personal representative and the professionals it hires, the trial court is controlled by section 733.617, Florida Statutes (1987), regardless of the fee schedule agreed to by the personal representative and its attorneys.[2] In re Estate of Wylie, *347 342 So.2d 996 n. 1 (Fla. 4th DCA 1977). A trial court’s determination of the reasonableness or necessity of fees will not be overturned on appeal, unless there is an abuse of discretion. In re Estate of Granger, 391 So.2d 311 (Fla. 4th DCA 1980); In re Estate of McCune, 223 So.2d 787 (Fla. 4th DCA 1969).
It is contended that it was error to include the house in the original inventory because the bank knew that record title was held by Reed Bryan III, and that it was error not to amend the inventory to remove the house as an asset after the supreme court determined the validity of Reed Bryan Ill’s title. We agree in part.
Prior to the supreme court’s decision, effectively vesting title to the house in Bryan III, Sun Bank was justified in treating it as a part of Camille’s estate and seeking to retain it as an estate asset. Indeed, up to the moment when that litigation ended, substantial doubt and conflict surrounded Bryan Ill’s acquisition of and entitlement to the property. The Sun Bank was faced with an obligation to protect and to administer the asset in the estate. In that circumstance, the Sun Bank was entitled to include the house in the inventory from the moment of its assumption of responsibilities as the personal representative to the moment when the supreme court eradicated doubt that the property was vested in Bryan III. Thus, in the period from November, 1986, upon publication of the supreme court’s opinion, to a time prior to May 25, 1989, the date of the trial court’s distribution order, the Sun Bank had adequate opportunity to amend the inventory to reflect the exclusion of the appraised value of the house and the inclusion of the lesser amount represented in Bryan Ill’s $100,000 promissory note. Moreover, the Sun Bank’s incorporation in the estate of the house at a value of $382,-000 was wholly inconsistent with the federal estate tax return prepared at its behest. Hence, the magnitude of the estate was inflated, the fee was not reasonable within the meaning of section 773.617, Florida Statutes (1987), and the trial court abused its discretion in awarding the Sun Bank a fee based upon the exaggerated amended inventory.
We now advert to the transfer of funds from the Tom Bryan trust to Camille’s estate, disclosed in the February 1982 amended inventory. It is apparent that nothing more was required than an in-house paper or bookkeeping transaction imposing virtually no burden upon the Sun Bank. It increased Camille’s estate, however, by $243,804.00, thus providing a dramatically enhanced multiplicand from which the Sun Bank’s and its attorney’s percentage based fees were determined — a manifest abuse. Upon remand, the trial court is directed to recompute the Sun Bank’s fee awarded it as the personal representative of Camille’s estate without the presence of the $243,804.00. This sum should not be considered an interest in property. The exercise of the power of appointment in that amount was but authority to dispose of property. In Re Estate of Wylie, 342 So.2d 996, 999 (Fla. 4th DCA 1977).
Finally, the trial court awarded Sun Bank’s attorneys a three percent fee based upon estate assets in the amount of $798,-765.11, as well as $42,769.00 for the representation of the Sun Bank in the litigation initiated by Bryan III. We have no difficulty in approving the litigation fee. The error we find in this aspect of the distribution order again arises from magnification of the estate. It is plain to us that in determining the three percent factor it is not reasonable to measure the estate by the $243,804.00 transferred into Camille’s account to pay the tax obligations. Thus, at the most, the attorney’s fees should have been based upon the first inventory filed on or about November 16, 1981 which disclosed the estate to be in the total amount of $554,961.01 with Camille’s house valued at $382,000.00. In our judgment, however, it was unreasonable to calculate the three percent attorney’s fee with the appraised value of the house in the estate. We are convinced that a fair and reason *348 able expenditure from the estate for services rendered to it by Sun Bank’s attorneys would exclude the appraised value of the house, thus placing the estate at $172,-961.01 plus Bryan Ill’s $100,000.00 promissory note, its equivalent in cash, or a judicially approved agreed upon amount.
Based upon the foregoing, this matter is remanded for further proceedings not inconsistent with this opinion.
DOWNEY and LETTS, JJ., concur.

. Although not an independent issue in this case, a law firm other than the Sun Bank's was employed to resolve the IRS dispute for which it was paid $ 15,000 from Camille's estate.

. Section 733.617, Florida Statutes (1987) provides as follows:
(1)Personal representatives, attorneys, accountants, and appraisers and other agents employed by the personal representative shall be entitled to reasonable compensation. Reasonable compensation shall be based on one or more of the following:
(a) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the service properly.
(b) The likelihood that the acceptance of the particular employment will preclude other employment by the person.
(c) The fee customarily charged in the locality for similar services.
(d) The amount involved and the results obtained.
(e) The time limitations imposed by the circumstances.
(f) The nature and length of the professional relationship with the decedent.
(g) The experience, reputation, diligence, and ability of the person performing the services.
(2) If a will provides for compensation of the personal representative either directly or conditionally and there is no contract with the decedent regarding compensation, he may renounce the provisions and be entitled to reasonable compensation. A personal representative also may renounce his right to all or any part of the compensation. A renunciation may be filed with the court.
(3) If the personal representative is a member of The Florida Bar and has rendered legal services in connection with his official duties, he *347 shall be allowed a fee therefor, determined as provided in subsection (1).