JAMES GARFIELD, trustee, *vs.* STATE STREET TRUST COMPANY & another, administrators, & others.

Suffolk.    May 10, 1946. — January 10, 1947.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Power.*

The donee of a general power of appointment may effectively exercise the power by creating a new power which does not offend the rule against perpetuities.

The will of a son of the donor in an indenture of trust, construed as a whole and in the light of the circumstances known to him at the time of its execution, required conclusions that his wife was the chief object of his testamentary bounty and that provisions of the will, purporting to exercise a power of appointment by will, given him in his father's indenture of trust over certain income and principal, by placing the property which was subject to the power, if his wife survived him, in trust for her benefit during her life and directing that on her death it should be paid over to such persons as she by her will should appoint, constituted a valid exercise of the power and not a mere attempted delegation thereof.

In the will of a wife, considered as a whole and with the provisions of the will of her husband, who had predeceased her, giving her a life interest

in and a general power of appointment by will of both principal and income of certain property over which he himself had had a power of appointment by will under an indenture of trust executed by his father, an intention to exercise, and a valid exercise of, the power thus given her were manifest by certain provisions disposing of "all the rest, residue and remainder" of her "property, including all property over which" she might "have any power of appointment under" her husband's will or under the indenture of trust of his father.

PETITION, filed in the Probate Court for the county of Suffolk on February 14, 1945.

The case was heard by *Dillon*, J.

*J. Garfield*, stated the case.

*R. H. Wiswall*, (*C. Y. Wadsworth* with him,) for State Street Trust Company and others, administrators, and others.

*E. G. Fischer*, (*H. B. Powers* with him,) for Massachusetts Society for the Prevention of Cruelty to Animals, and others.

*R. Wait*, for administrator with the will annexed of Rose L. Dexter, and others.

*F. T. Doyle*, for the guardian ad litem, submitted a brief.

DOLAN, J.   By this petition brought by the trustee under an indenture of trust of William S. Dexter, late of Boston, dated April 12, 1898, the trustee seeks instructions as to the proper distribution of the income from the trust estate subsequent to the death of Evangeline Hope Dexter, and as to the distribution of the principal of the trust estate at the termination of the trust — the latter a question as to future duties when the case was argued before us, but now a question as to a present duty, the trust having since terminated by reason of the death, which has been suggested to us, of the respondent Rose L. Dexter, whose administrator with the will annexed has been permitted to appear and represent her interests in the proceeding.   The judge entered a decree instructing the petitioner that one half of the net income of the trust fund was payable to the then respondent Rose L. Dexter and one half to the trustees under the will of William Dexter, and that no persons claiming as legatees, devisees or appointees under the will of Evangeline Hope Dexter have any interest in the principal of the trust property in question, by reason of the will of George T. Dexter, late of

Sherborn (a son of the creator of the trust), or by reason of the will of Evangeline Hope Dexter (the widow of said George). From this decree appeals were taken by the administrators with the will annexed of the goods not administered of the estate of Evangeline, by the trustees under her will, and by four charitable corporations to which were devised and bequeathed the balance of her estate upon the termination of the trust created by the residuary clause of her will. The case was heard in the court below upon the petition as amended, the facts set forth therein having been admitted by the answers of the respondents, and upon a stipulation of the parties to the effect that Evangeline Hope Dexter, and Thomas W. Ross, Westanna Lyon Ross and George Burton Ross who are named in the will of Evangeline, were all living prior to the creation of the trust indenture on April 12, 1898.

The material facts may be summed up as follows: By the indenture of trust William S. Dexter, hereinafter referred to as the donor, transferred certain personal property to trustees for the following purposes: "To hold, manage, invest and reinvest the same with the powers hereinafter set forth, to collect the income thereof and after paying the expenses of administering the trusts herein declared, to pay the net residue of said income, as often as semi-annually to my four children, Elsie Dexter, George T. Dexter, Rose L. Dexter and Philip Dexter, in equal shares during their respective lives. After the death of each of them, to pay the share of said net income which the person so dying would have received if he or she had not died, to and among the survivors and survivor. But if any of them shall leave a husband, wife or issue, other than an adopted child or children, surviving him or her, then to pay such share of said income as the person so dying would have received if he or she had not died, in such manner as he or she may have appointed by a last will made at any time after the date of these presents. . . . Upon the death of the last survivor of them, the said Elsie Dexter, George T. Dexter, Rose L. Dexter and Philip Dexter to pay over, transfer and deliver the principal or capital of the trust fund, as then existing, in the propor-

tions and to the persons who would have taken it if said survivor had owned the same and died intestate. Provided however, that if any of them, the said Elsie, George T., Rose L., and Philip, shall have left a husband, wife or issue, other than an adopted child or children, surviving him or her, the said capital shall upon the death of the last survivor of the said Elsie, George T., Rose L., and Philip, be paid over, transferred and delivered as such person or persons so leaving husband, wife or issue surviving him or her may have appointed by a last will made at any time after the date of these presents, the said capital to be divided into as many shares as there have been persons entitled under the provisions hereof to make such appointment, and one such share to be paid according to the terms of each such appointment. And in each case of default of such appointment by any person entitled to make the same, the share of capital which such person might have appointed shall be paid over and conveyed to such persons and in such proportions as would have taken it if the person so failing to appoint had owned the same property at the time of his or her decease and had died intestate immediately after such last survivor."

Elsie Dexter died September 3, 1905, leaving no husband or issue. Philip died July 25, 1934, survived by his wife, Edith W. Dexter, who died February 17, 1942, one son, William, who died February 8, 1943, and four grandchildren, Constance V. R., Nathaniel, Philip and Mary Ann.[1] The donor's son George died March 5, 1927, leaving a wife, Evangeline Hope Dexter, but no issue, and the donor's daughter Rose died September 17, 1946, leaving no husband or issue. Upon her death, as noted before, the trust under the indenture terminated.

The issues presented for determination are whether the donor's son George T. Dexter duly exercised the power of appointment given him by the terms of the indenture (a) as to income, and (b) as to principal, and whether his widow, Evangeline, effectively exercised the power of appointment given her by his will.

---

[1] Philip validly exercised his power of appointment under the trust indenture so far as now material, in favor of his son William.

By his will the donor's son George provided as follows: "1. I give, devise and bequeath to my wife Evangeline Hope Dexter, if she shall survive me, all the property real or personal of which I shall die seized or which shall come into my possession and control, of every kind and nature and wherever situate, to have and to hold to my said wife absolutely and in fee simple.  2. If my said wife survives me, I give, devise and bequeath to the State Street Trust Company, a banking corporation having its principal place of business in Boston in the County of Suffolk and said Commonwealth, all the property, real or personal and wherever situate over which I have power of appointment or disposition by will under the trust created in the will of my father, William Sohier Dexter, late of said Boston, and any other property over which I may have power of appointment or disposition by will under any other will, trust indenture or other instrument, to have and to hold to the said State Street Trust Company, solely in trust for the following purposes:  To hold, manage and invest and to pay over the net income to my said wife, Evangeline Hope Dexter, if she shall survive me, so long as she shall live, in quarterly payments or oftener in the discretion of said trustee.  I hereby further authorize and empower my said trustee in case of special necessity resulting from the sickness or disability of my said wife or from other unforeseen causes to pay over to my said wife such portion of the principal trust sum as may in their judgment be necessary for the care and comfortable support and welfare of my said wife.  Upon the death of my said wife said trust shall be terminated, if she shall have survived me, and the principal sum shall then be paid over to such persons and for such purposes as she, the said Evangeline Hope Dexter, may by her will appoint, and in default of such appointment the said principal shall be distributed among my heirs-at-law determined as of the date of her death."  In the event that Evangeline should die before him the testator George provided as follows:  "To hold, manage and invest and to pay out of the net income thereof the sum of ten thousand dollars ($10,000.) per annum to each of the parents of my wife, George W. Ross and Eliza A.

Ross of said Boston, if they or either of them survive me. Upon the death of either George W. Ross or Eliza A. Ross either before or after my death, his or her share of said income shall be paid to their son, Thomas W. Ross for life if he shall survive them or either of them.· Said Thomas W. Ross shall have the. combined income to the amount of twenty thousand dollars ($20,000.) per annum for life if he shall survive both his parents. Should said Thomas W. Ross die before the survivor of his said parents the entire combined income to the amount of twenty thousand dollars ($20,000.) per annum shall be paid to· such survivor for life. The income under this trust shall run from the date of my death and I direct that the first payments shall be made as promptly as possible after the appointment of said trustee. In each case said income shall be payable at least as often· as quarterly or oftener in the discretion of my said trustee. Upon the death of the last survivor of said George W. Ross, Eliza A. Ross and Thomas W. Ross, said trust shall be terminated and the principal fund shall be distributed among my heirs-at-law determined as of the date of the death of the last survivor of these three beneficiaries." After the death of George and until the death of Evangeline, his wife, who survived him, the trustee under the indenture paid the share of income (one third) that had been payable to him to the trustee for Evangeline under his will. One third of the income up to the time of the death of Evangeline was paid to Rose L. Dexter, and one third to the four children of William, the son of Philip.

Evangeline, the widow of George, died testate on August 25 (23?), 1944. By her will she provided as follows: "Fourth: All the rest, residue and remainder of my property, including all property over which I may have any power of appointment under the will of my late husband George T. Dexter or under an Indenture of Trust of William S. Dexter dated April 12, 1898 or under any other instrument, I give, devise, bequeath and· appoint first to my executors, or to any administrators with this my will annexed, such sum as may be necessary to carry out the provisions of Article Sixth hereinafter set forth, and second to my trustees

the balance upon trust to hold, manage, invest and reinvest the same and to pay to my said brother Thomas W. Ross during his life the sum of Ten Thousand Dollars annually, payable quarterly; after the death of my said brother to pay to his wife Westanna Lyon Ross, if she shall survive him, the sum of Five Thousand Dollars annually during her life, payable quarterly; and to pay to my nephew George Burton Ross of Reeds Ferry, Merrimack, New Hampshire, during his life the sum of Five Thousand Dollars annually, also payable quarterly. My said brother Thomas W. Ross, his wife Westanna Lyon Ross, and my nephew George Burton Ross, were all living upon the date of the establishment by William S. Dexter of his Trust dated April 12, 1898. The foregoing amounts shall be paid primarily from income, but if in any year the net income either current or reserved from prior years shall be insufficient to make such payments in full, I direct that any deficiency shall be paid from principal. Any balance of net income in excess of said annual payments in any year shall be held by my trustees and either added to principal in whole or in part, or retained by them in whole or in part as a reserve to secure the payment of said annual amounts from income thereafter. Upon the death of the survivor of my said brother and his said wife and of my said nephew, this trust shall terminate and my trustees shall pay over, transfer and convey the trust property as follows: To the Board of Trustees of the Sherborn Public Library at Sherborn, Massachusetts, the sum of One Thousand Dollars. To the Pilgrim Congregational Church in Sherborn, Massachusetts, the sum of One Thousand Dollars. To Seeing Eye, Inc. of Morristown, New Jersey, the sum of Twenty-five Hundred Dollars. To the Boston Nursery School for Blind Babies in Boston, Massachusetts, the sum of Twenty-five Hundred Dollars. All the balance of the trust property, both capital and income, shall be divided into four equal parts and one of such parts shall be paid to the Massachusetts Society for the Prevention of Cruelty to Children, one part to the Massachusetts Society for the Prevention of Cruelty to Animals, one part to the New England Home for Little Wanderers, and one part to the Animal Rescue League

in Boston, Massachusetts.   I direct that each of the funds
paid to the four charitable organizations above set forth
shall by each such charity be invested and maintained in-
tact as a permanent endowment fund to be known as the
George T. Dexter and Evangeline Hope Dexter Memorial
Fund, of which the income only shall be expended for the
general purposes of each such institution in the discretion of
its governing body. . . .   Sixth: It is not my intent that
debts, taxes, expenses of administration, other charges and
the legacies hereinbefore bequeathed shall be satisfied ex-
clusively out of my individual property, to the exclusion of
any property as to which I shall have a power of appoint-
ment but, on the contrary, that my own property not in trust
and any property appointed by this my will shall be con-
sidered as constituting one fund for the payment of debts,
taxes, expenses of administration, other charges, and the
legacies hereinbefore bequeathed, and to that end I appoint
to my executors and to any administrator with this my will
annexed whatever sum may be necessary to produce a fair
apportionment of all such charges and payments, and the
decision of my executors thereon shall be binding upon all
persons at any time interested in my will.''

The respondents who would take in default of appoint-
ment under the indenture of trust and who seek to support
the decree entered in the court below contend that the pro-
visions of the will of George are inapt to permit a conclusion
that George intended to give his wife, Evangeline, a power
to appoint income of the trust fund under the indenture;
that he did not intend to give her a power of appointment of
a share of principal of the fund unless the trust terminated
prior to her death; that in making his will he contemplated
that he would survive his sister Rose and his brother Philip,
both of whom were living when he executed his will (but who
in fact survived him); and that it was only in the event that
he survived them that he intended the power given to his
wife to take effect.   They also contend, in the alternative,
that the will of Evangeline did not and could not effectively
exercise the power given by George, and finally that the crea-
tion of the power under the will of George was invalid as an

attempt to delegate his own power of appointment under the trust indenture to his wife. We do not adopt those contentions.

Reading the will of George as a whole, in the light of the circumstances known to him at the time of its execution, we are of opinion that it was his obvious intention to exercise in favor of his wife the power of appointment given to him under the indenture of trust, as to both his share of the income and of the principal of the trust fund, that his exercise of the power was valid, and that the power conferred upon his wife was effectively exercised by her.

As we construe the will of George, we think that he had in mind the possibility that he might survive his sister Rose and his brother Philip, who were living when he made his will, and also that they might survive him. Had he survived them, under the terms of his will his exercise of his power would admittedly be good. And it seems manifest that he also had clearly in mind the contingency that he might predecease his sister and brother, otherwise he would not have provided so definitely, for the enjoyment of the income from his share of the trust estate by his wife through the trustee appointed by him to receive it and to administer it in her behalf until the termination of the trust under the trust indenture. The wife of George was obviously the chief object of his testamentary bounty. In the event that she survived him, as she did, all that he had was to be hers, either outright as to the property described in the first article of his will, or equitably in beneficial enjoyment with ultimate power of appointment of his interest under the trust indenture as provided in the second article of his will. It was only in the event that she predeceased him that those provisions should not take effect. It is not without significance that, in the event that his wife died before him; the testator George gave all of his property, including that over which he "may have power of appointment," to a trustee for the benefit of his wife's parents, George W. Ross and Eliza A. Ross, and upon their death for the benefit of their son, his wife's brother Thomas, and that until the death of the last survivor of them, when the trust would terminate, no others

were the objects of his bounty.  Those provisions give evidence of his great concern for those dear to his wife should she predecease him.

· The exercise of the power by him did not exceed the limits imposed by the donor or by any principle of law.  The donor merely provided the conditions upon which his children were to have the right to exercise the power of appointment conferred by him upon them.  In case any of them dying left a spouse or issue, that right extended not only to the income from his or her share until the termination of the trust, but also to the share of the principal distributable then.  With the exception of the provision limiting them or their appointees to income during the life of the trust, any of them dying leaving spouse or issue had as complete ultimate control as if the property had been given to him outright.  It is settled in this Commonwealth and by the weight of authority elsewhere [1] that the donee of a general power can effectively exercise the power by creating a new power which does not offend the rule against perpetuities.  In *Thayer* v. *Rivers*, 179 Mass. 280, relied upon by the appellee respondents, the donee of a limited power attempted to exercise that power by creating a power to appoint to nonobjects of the limited power conferred upon him.  That attempt was struck down, the court saying in part concerning the right of a donee to exercise a power by creating a new power that "it has been held that one having an estate with a power of appointment under which he may give an absolute interest, or may put limitations on the use and enjoyment of that which otherwise would be such an interest, properly may exercise the power by giving one substantially the whole interest in the property and the whole control of it, in the form of a right of personal use and enjoyment during his life, with a right, by deed or will, to appoint persons who

---

[1] *Matter of Wildenburg*, 174 Misc. (N. Y.) 503, and cases cited.  Cases cited in 50 Harv. L. Rev. 945, 946.  Tiffany, Real Property (3d ed.) § 693. Page on Wills, § 1319, and cases cited.  *Slark* v. *Dakyns*, L. R. 10 Ch. 35. *Mays* v. *Beech*, 114 Tenn. 544.  *White* v. *Wilson*, 1 Drew. 298.  *Morgan* v. *Gronow*, L. R. 16 Eq. 1.  *Crooke* v. *County of Kings*, 97 N. Y. 421, 458.  See also Restatement: Property, § 357; Restatement: Trusts, § 21; Scott on Trusts, § 21.

shall have it after his death" (page 289). In *Dexter* v. *Jackson*, 245 Mass. 333, where the donee of a general power in its exercise by her will made specific partial appointments, and then appointed the residue of the property over which she had the power in trust for her two children, the court gave instructions as to how taxes were to be apportioned, thus assuming the validity of the exercise of the power by the donee. Cases where the exercise of the power by the donee was struck down for remoteness, such as *Minot* v. *Paine,* 230 Mass. 514, and *Bundy* v. *United States Trust Co.* 257 Mass. 72, 79–80, are distinguishable in that respect from the present case in which, properly, no contention is made that the exercise of the power is void for remoteness. And cases relied upon by the appellees dealing with special or limited powers of appointment are not in point. In *Boston Safe Deposit & Trust Co.* v. *Prindle,* 290 Mass. 577, also relied upon by the appellees, the objects of the exercise of the power were given no beneficial interest in the property, but merely a power to select beneficiaries. In essence the exercise of the power by George in the present case was not a delegation of his power, but was a complete exercise of it, and under the terms of his will all his rights under the indenture of trust passed for the benefit of his wife, and in its nature was rather "a statement of a mode of enjoyment, use, and disposition of that which is virtually an absolute interest." *Thayer* v. *Rivers,* 179 Mass. 280, 289. The donee of such a power, although he cannot transfer the property that is the subject of the power during his life, is for many purposes treated as owner, and by appointment to take effect at his death may make the property completely his own by appointment to his estate. *Tuell* v. *Hurley,* 206 Mass. 65, 68. And, indeed, where he exercises a general power in favor of volunteers, in so far as his personal estate is insufficient to satisfy his creditors, recourse may be had to the appointed property for that purpose. *Hill* v. *Treasurer & Receiver General,* 229 Mass. 474, 476. *State Street Trust Co.* v. *Kissel,* 302 Mass. 328, 335, 336. Scott on Trusts, § 158.1. The power of appointment conferred upon George under the provisions of the trust indenture was

validly exercised by his will as to both the income and the principal of his share.

The power thus conferred upon his wife, Evangeline, was validly exercised by her under her will. The exercise of this power by her is obviously not void for remoteness. The language employed by her considered in the light of the will as a whole, read with the terms of her husband's will in mind, manifests an intention on her part to exercise the power. That intent is "not to be thwarted by refinements and distinctions resting upon subtlety and ingenuity or by lack of technical accuracy in the use of words or by unduly stressing the literal meaning of a few words or by attaching to them a hard and fast meaning which is not in consonance with the setting in which they were employed," *Beals* v. *Magenis*, 307 Mass. 547, 552, even though it should appear that some of the language used was inapt. We do not concur in the argument of the appellees that the grant to her executors by Evangeline of "such sum" as may be necessary to carry out the terms of article Sixth of her will, apportioning taxes and debts between the appointed property and her own, is inconsistent with the exercise of the power, and inappropriate to property in expectancy rather than in possession and enjoyment. See *Old Colony Trust Co.* v. *Sargent*, 235 Mass. 298, 302–303. An adjustment to carry out those provisions can now be made by the trustees under her will, the trust under the indenture having terminated.

We conclude that upon the death of Evangeline and until the death of Rose L. Dexter the income from the trust fund under the indenture became payable one third to the personal representatives of the estate of Evangeline, one third to the personal representatives of the estate of William Dexter, and one third to Rose L. Dexter, and that upon the death of Rose the principal trust fund became payable and is now payable one half to the personal representatives of the estate of William Dexter, and the remaining one half to the personal representatives of the estate of Evangeline Hope Dexter. The representatives of the estate of Evangeline have requested in their answer that they be instructed as to whether the income payable to them under the will of

Evangeline that accrued after her death and before the death of Rose is to be treated·by them as income or principal of the trust estate. If such instructions are necessary to aid the trustees under her will, in the light of the specific and clear directions concerning the payment of the fixed sums provided for in the fourth article of her will primarily out of income, with recourse to principal if the income should be insufficient to pay those sums, and the accumulation of surplus income, we do not deem it appropriate, without saying that it would be permissible, to comply with the request for such instructions in this proceeding.

The decree entered in the Probate Court is reversed and instead a final decree is to be entered after rescript in accordance with this opinion. In that decree the allowances of costs and expenses made in the decree of the judge which is reversed may be included, together with allowances of costs and expenses of this appeal in the discretion of the Probate Court, to those respondents or their counsel who have participated in the proceedings before us.

*So ordered.*