******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# HELEN Z. BENJAMIN ET AL. *v.* RALPH P. CORASANITI, TRUSTEE, ET AL.
## (SC 20491)

Robinson, C. J., and McDonald, D'Auria, Kahn,
Ecker and Keller, Js.

*Syllabus*

The plaintiffs, H and the cotrustees of certain trusts of which H was a beneficiary, appealed to the trial court from the decision of the Probate Court, which concluded that H's brother, P, had validly exercised his testamentary powers of appointment under certain trusts established for his benefit by directing in his will that the proceeds of the sale of stock in a family corporation, H Co., be distributed to a charitable trust that P had established. P and his five siblings, including H, were each a beneficiary of two trusts established by their father in 2002 and 2005, which were governed by Illinois and Connecticut law, respectively. In 2011, P and his siblings, except H, transferred their shares in H Co. to separate trusts, which also were governed by Illinois law. Pursuant to P's 2002, 2005 and 2011 trust instruments, P was granted a nongeneral testamentary power of appointment over the H Co. shares held in trust for his use and benefit. P could exercise his power of appointment only by specific reference in his will, but not in favor of himself, his creditors, his estate, or the creditors of his estate. Furthermore, if P failed to validly exercise his power of appointment, his trust property would be distributed equally to the trusts of his surviving siblings. In addition, the H Co. shareholder's agreement provided that, if a sibling exercises his or her power of appointment with respect to the H Co. shares held in his or her trusts, those shares shall be sold, within nine months of the sibling's death, in equal amount to the surviving siblings' trusts. After an accident rendered P a quadriplegic, P established the charitable trust in 2016, the purpose of which was to provide financial assistance to quadriplegics and their caregivers and to fund quadriplegia related research and initiatives. P thereafter executed a will in which he stated that he was exercising his testamentary powers of appointment over the H Co. shares held in his 2002, 2005 and 2011 trusts and directed that the proceeds from the sale of the H Co. shares be distributed to the 2016 charitable trust. P died in 2017, survived by his five siblings, and his will was admitted to probate. The Probate Court concluded that P's exercise of his powers of appointment was valid and ordered the trustees of the siblings' respective trusts to fund the 2016 charitable trust with the net proceeds of the sale of the H Co. stock. On appeal to the trial court, the plaintiffs claimed that P's exercise of his powers of appointment was invalid under both Connecticut and Illinois law because the 2016 charitable trust was not funded prior to P's death. The trial court, however, upheld the decision of the Probate Court and rendered judgment in favor of the defendants, which included P's siblings other than H, their descendants, the trustees of their family trusts, and the trustees of P's trusts. On the plaintiffs' appeal, *held* that the trial court correctly concluded that P effectively and validly exercised his nongeneral testamentary powers of appointment to direct the proceeds of the sale of the H Co. stock held in his 2002, 2005 and 2011 trusts to the 2016 charitable trust, even though the 2016 trust was unfunded at the time of P's death: under both Connecticut and Illinois law, the exercise of a nongeneral power of appointment is valid and effective if the donee expresses an intent to exercise the power of appointment and the donee complies with any conditions imposed on the exercise of the power of appointment by the donor; in the present case, it was undisputed that P expressed in his will a clear and unequivocal intent to exercise his powers of appointment, and P complied with the conditions imposed on the exercise of those powers by the 2002, 2005, and 2011 trusts, as the 2016 charitable trust was an organization other than P, P's creditors, P's estate, or the creditors of P's estate, and P exercised his powers by specific reference in a valid will that was admitted to probate; moreover, although the 2016 charitable trust was unfunded

prior to P's death and, therefore, was not a valid and enforceable charitable trust during P's lifetime, a trust need not be funded contemporaneously with the execution of the trust documents, and the 2016 charitable trust became valid and enforceable when it was funded, after P's death, through the exercise of P's powers of appointment in his will; furthermore, contrary to the plaintiffs' claim, the fact that P appointed the proceeds of the sale of the H Co. stock to a trust, rather than a trustee, did not render the exercise of his powers of appointment invalid and ineffective, as a trustee may be temporarily absent without destroying the trust or preventing its creation, especially in light of the axiom that a charitable trust must be construed liberally in order to carry out the charitable purposes of the individual who created the trust.

Argued April 1—officially released December 6, 2021*

*Procedural History*

Appeal from the decision of the Probate Court for the district of Darien-New Canaan confirming that the decedent had validly exercised his testamentary power of appointment when he appointed certain property held in trust to an unfunded charitable trust, brought to the Superior Court in the judicial district of Stamford-Norwalk and transferred to the judicial district of Waterbury, where Scott A. Weisman et al. were substituted for the named plaintiff only in her former capacity as trustee and added as plaintiffs; thereafter, the case was tried to the court, *Bellis*, *J.*; judgment affirming the decision of the Probate Court, from which the plaintiffs appealed. *Affirmed.*

*Steven M. Frederick*, with whom were *David G. Keyko*, pro hac vice, and, on the brief, *Christopher Fennell*, pro hac vice, and *Gessi Giarratana*, for the appellants (plaintiffs).

*Helen Harris*, with whom, on the brief, were *John W. Cerreta*, *Thomas D. Goldberg* and *Michael Schoeneberger*, for the appellees (named defendant et al.).

*Charles W. Pieterse*, with whom were *Wyatt R. Jansen* and *Lynn K. Neuner*, for the appellees (defendant William T. Ziegler et al.).

*Frederic S. Ury*, with whom, on the brief, was *Deborah M. Garskof*, for the appellees (defendant Karl H. Ziegler et al.).

*Gary W. Hawes*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, *Clare E. Kindall*, solicitor general, and *Karen Gano*, assistant attorney general, for the appellee (defendant attorney general).

ECKER, J. In July, 2015, Peter M. Ziegler (Peter), a scion of a wealthy Connecticut family, suffered a tragic accident that rendered him a quadriplegic. Approximately one year later, Peter executed a trust instrument to create a charitable trust, Peter's Yellow Submarine Trust, for the purpose of providing financial assistance to other quadriplegics and their caregivers. The trust was not funded during Peter's lifetime, but Peter, who had nongeneral testamentary powers of appointment under various Ziegler family trusts, exercised his pow-

ers of appointment in his will to direct the proceeds of the sale of stock in a Ziegler family corporation, Hay Island Holding Corporation (HIHC), to Peter's Yellow Submarine Trust. Peter's sister, Helen Z. Benjamin (Helen), subsequently challenged the validity of Peter's exercise of his nongeneral testamentary powers of appointment, alleging that a trust that remains unfunded during a testator's lifetime does not exist as a matter of law and, therefore, is an impermissible appointee. The Probate Court disagreed, and the trial court affirmed, concluding that Peter's Yellow Submarine Trust was a permissible appointee even though it was not funded prior to Peter's death. On appeal, we must determine whether an unfunded charitable trust is a permissible appointee of the exercise of a nongeneral testamentary power of appointment. We answer that question in the affirmative and, accordingly, affirm the judgment of the trial court.

The record reflects the following stipulated or otherwise undisputed facts. In 2002, Peter's father, William Ziegler III, created The William Ziegler III Family Irrevocable Trust (2002 Trust), which established separate trusts for the benefit of Peter and each of his five siblings: Melissa J. Ziegler, William T. Ziegler, Karl H. Ziegler, Cynthia Z. Brighton, and Helen. The 2002 Trust holds shares of HIHC, which is wholly owned by the Ziegler family and their trusts. Pursuant to § 3.4 of the 2002 Trust, Peter was granted a nongeneral testamentary power of appointment over the HIHC shares held in trust for his use and benefit. Section 3.4 (A) of the 2002 Trust provides in relevant part that, upon Peter's death, his 2002 Trust "shall terminate" and that, "by specific reference in his . . . will, [Peter] may appoint the remaining trust property in such amounts, either outright or in further trust . . . to or for the benefit of any one or more persons or charitable organizations . . . provided, however, that such limited power of appointment shall not be exercisable in favor of [Peter], his . . . creditors, his . . . estate, or the creditors of his . . . estate . . . ." (Emphasis in original.) If Peter failed validly to exercise his nongeneral testamentary power of appointment, his trust property would be distributed equally to his descendants or, alternatively, to the 2002 Trusts of his surviving siblings. The 2002 Trust is governed by Illinois law.

In 2005, William Ziegler III created a second trust, The William Ziegler III Revocable Trust, which, among other things, created a Trust C (2005 Trust C) holding HIHC shares for the use and benefit of each of the six Ziegler siblings. Under § 3.12 of the 2005 Trust C, Peter was granted a nongeneral testamentary power of appointment substantially similar to that contained in the 2002 Trust, which could not be exercised in favor of Peter, his creditors, his estate, or the creditors of his estate.[1] Also similar to the 2002 Trust, Peter's failure to validly exercise his nongeneral testamentary power

of appointment would result in the distribution of his trust property equally to his descendants or, alternatively, to the trusts of his surviving siblings. The 2005 Trust C is governed by Connecticut law.

In 2011, all of the Ziegler siblings, with the exception of Helen, transferred their shares in HIHC to separate trusts. Pursuant to Peter's 2011 Irrevocable Trust (2011 Trust), which was established by his wife, Marie Longner Ziegler, Peter was granted a nongeneral testamentary power of appointment that, like the other two trusts, could not be exercised in favor of Peter, his creditors, his estate, or the creditors of his estate.[2] Similarly, if Peter died without validly exercising his nongeneral testamentary power of appointment, the trust property would be distributed equally to his descendants or, alternatively, to the 2002 Trusts of his surviving siblings. The 2011 Trust, like the 2002 Trust, is governed by Illinois law.

In December, 2012, the shareholders in HIHC, including Peter, his siblings, and the trustees of their respective trusts, entered into an Amended and Restated Shareholder's Agreement of Hay Island Holding Corporation (shareholder's agreement). The shareholder's agreement provides that, if a Ziegler sibling exercises his or her nongeneral testamentary power of appointment with respect to the HIHC shares in the 2002 Trust, the 2005 Trust C, or the 2011 Trust, "the shares as to which the testamentary power of appointment was exercised shall be sold in equal shares to the surviving Ziegler [s]iblings' [family] [t]rusts." The sale must "take place within nine . . . months of the date of death of the deceased Ziegler [s]ibling," and the shares shall be valued "as of the date of death of the Ziegler [s]ibling . . . ."

As we previously mentioned, Peter suffered a tragic accident in 2015 that rendered him a quadriplegic. Approximately one year later, on August 5, 2016, Peter signed a trust instrument establishing Peter's Yellow Submarine Trust and designating himself and two of his siblings as trustees. The express purpose of Peter's Yellow Submarine Trust "is to make distributions, loans, or grants exclusively for [c]haritable [p]urposes . . . with special emphasis on distributions, loans, or grants related to (1) providing housing assistance to quadriplegics, (2) providing assistance with the development and distribution of assistive devices and tools for quadriplegics, (3) providing assistance and education to caregivers of quadriplegics, and (4) providing funding for research related to paralysis and returning motor and nerve function to quadriplegics." The Peter's Yellow Submarine Trust instrument provides that the res of the trust is the "property listed in Schedule A attached hereto," but there is no evidence that a Schedule A ever was attached or that the trust was funded prior to Peter's death.

In October, 2016, Peter executed a will, which references his "testamentary powers of appointment over the [HIHC] [s]hares held" in the 2002 Trust, the 2005 Trust C, and the 2011 Trust, and which states that "I hereby exercise such powers and direct that all of the [s]hares be sold in accordance with the [s]hareholder's [a]greement and the net proceeds of such sale shall be distributed to . . . Peter's Yellow Submarine Trust, to be added to principal and applied for such organization's charitable purposes." Approximately one year later, Peter died without descendants, and his will was admitted to probate. Peter is survived by all five Ziegler siblings.

In May, 2018, Peter's sister Helen received a copy of the Peter's Yellow Submarine Trust instrument and learned that it was not funded prior to Peter's death. After voicing concerns about the validity of Peter's exercise of his nongeneral testamentary powers of appointment and the pending nine month deadline for the sale of Peter's shares of HIHC stock under the terms of the shareholder's agreement, Helen entered into a memorandum of understanding with the trustees of the respective Ziegler family trusts, which provided that they would "file a petition in Connecticut Probate Court seeking a determination as to the validity of Peter's exercise of the [p]owers of [a]ppointment," and, "if a final [nonappealable] court determination has not been issued prior to November 20, 2018, validating the exercise of any [p]ower of [a]ppointment," the sale of Peter's stock will be rescinded and the respective trusts will be returned to their "status prior to June 5, 2018, so as to avoid incurring any income tax liability . . . ."

In order to meet the nine month deadline set forth in the shareholder's agreement, Peter's HIHC stock in the 2002 Trust, the 2005 Trust C, and the 2011 Trust was sold on June 5, 2018, yielding "approximately $184 million in proceeds of cash and promissory notes, of which $7,513,353 was attributable to the shares held by the 2002 Trust, $150,678,000 to the shares held by the 2005 Trust [C], and $25,909,767 to the shares held by the 2011 Trust."[3]

On June 26, 2018, pursuant to the memorandum of understanding, the named defendant, Ralph P. Corasaniti, who is the cotrustee of the Ziegler family trusts, filed a petition for construction of trusts and confirmation of exercise of powers of appointment in the Probate Court, seeking a judicial construction of Peter's 2002 Trust, 2005 Trust C, and 2011 Trust and confirmation that the exercise of Peter's powers of appointment in favor Peter's Yellow Submarine Trust was valid. Following briefing and oral argument, the Probate Court concluded that Peter's exercise of his powers of appointment was valid because Peter's intent to establish a charitable trust by exercising his powers of appointment was clear and consistent with the "modern

practice of Connecticut attorneys [to] recognize the validity of testamentary transfers to unfunded trusts through [the] use of a power of appointment." Accordingly, the Probate Court ordered the trustees of the respective trusts to "fund Peter's Yellow Submarine Trust with the net . . . proceeds of the [sale of the] HIHC [stock]."

The plaintiffs, Helen and the cotrustees of her Ziegler family trusts,[4] filed an appeal in the Superior Court pursuant to General Statutes § 45a-186, alleging that Peter's exercise of his nongeneral testamentary powers of appointment was invalid under both Connecticut and Illinois law because Peter's Yellow Submarine Trust was not funded prior to his death. The defendants, Peter's other siblings, their descendants, the trustees of their family trusts, the trustees of Peter's trusts, and the attorney general,[5] opposed the plaintiffs' appeal and sought to enforce the Probate Court's order requiring Peter's Yellow Submarine Trust to be funded by the net proceeds of the sale of the HIHC stock in Peter's 2002 Trust, 2005 Trust C, and 2011 Trust.

The trial court conducted a two day bench trial, at which the parties stipulated to the operative facts and presented expert testimony regarding the validity of Peter's exercise of his nongeneral testamentary powers of appointment under Illinois law. At the conclusion of the bench trial, the trial court determined that Peter effectively had exercised his powers of appointment under Connecticut and Illinois law because his intent to exercise his powers of appointment was clear and Peter's Yellow Submarine Trust was a permissible appointee despite its unfunded status at the time of Peter's death. Accordingly, the trial court upheld the decision of the Probate Court and rendered judgment in favor of the defendants. This appeal followed.[6]

On appeal, it is undisputed that Peter expressed a clear and unequivocal intent to exercise his nongeneral testamentary powers of appointment in favor of Peter's Yellow Submarine Trust. The parties dispute, however, whether Peter's exercise of these powers was valid and effective given that Peter's Yellow Submarine Trust was not funded during Peter's lifetime. The plaintiffs contend that Peter's Yellow Submarine Trust was not a permissible appointee under both Connecticut and Illinois law because, in the absence of trust property, it was not a legal entity to which property could be appointed in Peter's will. The defendants respond that a trust need not be funded at the time of its creation but may be funded at a later date by the transfer of property to the trust, including by the exercise of a testamentary power of appointment. They contend that Peter's unequivocal exercise of his nongeneral testamentary powers of appointment in accordance with the limits set forth in the 2002 Trust, the 2005 Trust C, and the 2011 Trust funded Peter's Yellow Submarine Trust

at the time of Peter's death, thereby creating a valid and enforceable charitable trust. We agree with the defendants.

The validity of Peter's exercise of his nongeneral testamentary powers of appointment is a question of law over which we exercise plenary review. See, e.g., *Powers* v. *Olson*, 252 Conn. 98, 105, 742 A.2d 799 (2000) ("[w]hen . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record" (internal quotation marks omitted)). "A power of appointment is a power of disposition given to a person over property not his own by someone who directs the mode in which that power shall be exercised by a particular instrument. . . . The donor does not vest in the donee of the power title to the property, but simply vests in the donee power to appoint the one to take the title. The appointee under the power takes title from the donor, and not from the donee of the power. . . . The ultimate beneficiary really takes from the person who created the power, the donee of the power acting as a mere conduit of the former's bounty."[7] (Citations omitted; internal quotation marks omitted.) *Linahan* v. *Linahan*, 131 Conn. 307, 324, 39 A.2d 895 (1944). Thus, "[a] power of appointment cannot transcend the limits upon it set by the donor . . . ." (Citations omitted.) *Union & New Haven Trust Co.* v. *Taylor*, 133 Conn. 221, 228, 50 A.2d 168 (1946).

To determine whether Peter's exercise of his nongeneral testamentary powers of appointment was valid and effective, we must examine the law governing the trusts from which he derived his powers. See 2 Restatement (Second), Conflict of Laws § 274 (a), p. 188 (1971) ("[a]n appointment made in the exercise of a power created under a trust to appoint interests in movables is valid . . . if made . . . in accordance with the law [that] determines the validity of the trust"); see also *Morgan Guaranty Trust Co. of New York* v. *Huntington*, 149 Conn. 331, 340–41, 179 A.2d 604 (1962) (New York judgment applying New York law to donee's exercise of testamentary power of appointment was not subject to collateral attack in Connecticut, even though donee was domiciled in Connecticut and donee's will was governed by Connecticut law, because donor's trust was executed in New York and trust property was located in New York); 2 Restatement (Second), supra, § 274, comment (b), p. 189 ("[a]n appointment made in the exercise of a power under a trust created by will or inter vivos to appoint interests in movables is valid if it is valid under the local law of the state [that] determines the validity of the trust itself"). The 2005 Trust C is governed by Connecticut law, whereas the 2002 and 2011 Trusts are governed by Illinois law.

Under both Connecticut and Illinois law, the exercise

of a nongeneral power of appointment is valid and effective if two conditions are met: (1) the donee expressed an intent to exercise the power of appointment, and (2) the donee complied with any conditions imposed on the exercise of the power of appointment by the donor. See, e.g., General Statutes § 45a-573 (donee of nongeneral power of appointment "may appoint to anyone not expressly excluded from the class of permissible appointees"); *DiSesa* v. *Hickey*, 160 Conn. 250, 258, 278 A.2d 785 (1971) (exercise of testamentary power of appointment is valid and effective only if "the will contains a reference to the power itself or to the subject of it, [or] . . . the intention to execute [the power] is manifest from the fact that the will would remain inoperative without the aid of the power, or is so clearly demonstrated by words or acts . . . that the transaction is not fairly susceptible of any other interpretation" (internal quotation marks omitted)); *Union & New Haven Trust Co.* v. *Bartlett*, 99 Conn. 245, 255, 122 A. 105 (1923) ("[t]he intention to execute the power must be apparent and clear, so that the transaction is not susceptible of any other interpretation, and, if it be doubtful under all the circumstances, that doubt will prevent it from being deemed an execution" (internal quotation marks omitted)); see also *In re Estate of MacLeish*, 35 Ill. App. 3d 835, 838, 342 N.E.2d 740 (1976) ("For an exercise of a testamentary power of appointment to be valid and effective, two requirements must be satisfied. First, the intention of the testator to exercise the power must be shown. Second, there must be compliance with any conditions established by the donor for its exercise.").

Because it is undisputed that Peter expressed a clear and unequivocal intent to exercise his powers of appointment, we need only address whether he complied with the conditions imposed on his exercise of those powers. Under the terms of the 2002 Trust, 2005 Trust C, and 2011 Trust, Peter was granted nongeneral powers of appointment that could be exercised in favor of any person or charitable organization other than himself, his creditors, his estate, or the creditors of his estate. See *Ahern* v. *Thomas*, 248 Conn. 708, 739 n.31, 733 A.2d 756 (1999) (" 'A power of appointment is general if it is exercisable in favor of any one or more of the following: the [donee] of the power, the [donee's] creditors, the [donee's] estate, or the creditors of the [donee's] estate. . . . Any other power of appointment is a nongeneral one.' "), quoting 2 Restatement (Second), Property, Donative Transfers § 11.4, p. 17 (1986); *Cooley* v. *Cooley*, 32 Conn. App. 152, 161–62, 628 A.2d 608 (same), cert. denied, 228 Conn. 901, 634 A.2d 295 (1993); see also *BMO Harris Bank N.A.* v. *Towers*, 43 N.E.3d 1131, 1139 (Ill. App. 2015) ("[a] power [of appointment] is said to be general when it is exercisable in favor of any person whom the donee may select, and special, limited, or particular when it is exercisable only

in favor of persons or a class of persons designated or described in the instrument creating the power" (internal quotation marks omitted)). Additionally, Peter's powers of appointment could be exercised only "by specific reference in his . . . will," meaning that Peter could not exercise his powers "during his lifetime . . . ." *Northern Trust Co.* v. *Porter*, 368 Ill. 256, 263, 13 N.E.2d 487 (1938); see also 2 Restatement (Second), Property, Donative Transfers, supra, § 18.2, comment (b), p. 250 ("[w]hen the donor prescribes that the power be exercised 'by will,' it is to be inferred that the donor meant by these words an instrument [that] is formally sufficient to be admitted to probate under the applicable law"). The record reflects that Peter satisfied these conditions because Peter's Yellow Submarine Trust is a charitable organization other than Peter, Peter's creditors, Peter's estate, or the creditors of Peter's estate, and Peter exercised his powers by specific reference in a valid will that was admitted to probate.[8]

The plaintiffs contend that Peter's exercise of his powers of appointment, even if otherwise valid, failed by operation of law in the present case because Peter's Yellow Submarine Trust was not funded during Peter's lifetime and, therefore, was not a legal entity to which property could be appointed. This claim is without merit.

Under both Connecticut and Illinois law, the delivery of trust property to a trustee is one of the essential elements for the creation of a valid and enforceable trust. See, e.g., *Palozie* v. *Palozie*, 283 Conn. 538, 545, 927 A.2d 903 (2007) ("[t]he requisite elements of a valid and enforceable trust are: '(1) a trustee, who holds the trust property and is subject to duties to deal with it for the benefit of one or more others; (2) one or more beneficiaries, to whom and for whose benefit the trustee owes the duties with respect to the trust property; and (3) trust property, which is held by the trustee for the beneficiaries' "), quoting 1 Restatement (Third), Trusts § 2, comment (f), p. 21 (2003); see also *Eychaner* v. *Gross*, 202 Ill. 2d 228, 253, 779 N.E.2d 1115 (2002) ("[i]n Illinois, creation of an express trust requires: (1) intent of the parties to create a trust, which may be shown by a declaration of trust by the settlor or by circumstances which show that the settlor intended to create a trust; (2) a definite subject matter or trust property; (3) ascertainable beneficiaries; (4) a trustee; (5) specifications of a trust purpose and how the trust is to be performed; and (6) delivery of the trust property to the trustee"). It is well settled that "[a] trust cannot be created unless there is trust property in existence and ascertainable at the time of the creation of the trust. . . . In the absence of trust property there is at most an instrument of trust, or a plan or promise to create a trust." (Citation omitted.) 1 Restatement (Third), Trusts, supra, § 2, comment (i), pp. 22–23. Nonetheless, "a trust may . . . be created later if and

when a transfer of property to the trustee is made with reference to that agreement or instrument." Id., p. 23. Thus, a trust need not be funded contemporaneously with the execution of the trust documents, so long as it is funded at a later point in time by the delivery of trust property to a trustee.

Peter's Yellow Submarine Trust was unfunded prior to Peter's death and, therefore, was not a valid and enforceable charitable trust during Peter's lifetime. Nonetheless, it became a valid and enforceable charitable trust after Peter's death through the exercise of his nongeneral testamentary powers of appointment in his will to fund Peter's Yellow Submarine Trust with the proceeds of the sale of the HIHC stock in his 2002 Trust, 2005 Trust C, and 2011 Trust. Indeed, under the common law, a trust need not exist prior to the exercise of a power of appointment. Instead, "a trust may be created by . . . an exercise of a power of appointment by appointing property to a person as trustee for one or more persons who are objects of the power . . . ."[9] Id., § 10 (d), p. 145; see *In re Breault's Estate*, 29 Ill. 2d 165, 178, 193 N.E.2d 824 (1963) (implicitly recognizing that trust may be created by exercise of testamentary power of appointment if will reflects donee's clear intent to exercise power of appointment); see also *Garfield* v. *State Street Trust Co.*, 320 Mass. 646, 657, 70 N.E.2d 705 (1947) (donee validly exercised general testamentary power of appointment to create valid trust); *Shriners Hospital for Crippled Children* v. *Citizens National Bank, Covington, Virginia*, 198 Va. 130, 136–37, 92 S.E.2d 503 (1956) (same). Peter exercised his nongeneral testamentary powers of appointment by directing in his will "that all of the [HIHC] [s]hares be sold in accordance with the [s]hareholder's [a]greement and the net proceeds of such sale shall be distributed to . . . Peter's Yellow Submarine Trust, to be added to principal and applied for such organization's charitable purposes," and fulfilled the formal requirements necessary to complete the creation of Peter's Yellow Submarine Trust as a valid and enforceable charitable trust.

Section 401 (3) of the Uniform Trust Code, which recently was adopted in Connecticut and Illinois, codifies this common-law rule.[10] See Unif. Trust Code § 401 (3) (2000), 7D U.L.A. 134 (2018). Under both Connecticut and Illinois law, "[a] trust may be created by . . . exercise of a power of appointment . . . in favor of a trustee . . . ." General Statutes § 45a-499v (3); accord 760 Ill. Comp. Stat. Ann. 3/401 (3) (West Cum. Supp. 2020).[11] The official commentary accompanying the Uniform Trust Code confirms that an inter vivos trust that was not funded during the donee's lifetime may be completed by the testamentary exercise of a power of appointment. See *Yale University* v. *Blumenthal*, 225 Conn. 32, 38, 621 A.2d 1304 (1993) ("[a] court can properly consider the official comments as well as the published comments of the drafters as a source for

determining the meaning of an ambiguous provision [of a uniform act]") (internal quotation marks omitted)); see also *Zaabel* v. *Konetski*, 209 Ill. 2d 127, 134–35, 807 N.E.2d 372 (2004) (considering official comment to uniform act to clarify statutory ambiguity). According to the commentary accompanying § 401 of the Uniform Trust Code, "a trust is not created until it receives property," but trust property "need not be transferred contemporaneously with the signing of the trust instrument. A trust instrument signed during the settlor's lifetime is not rendered invalid simply because the trust was not created until property was transferred to the trustee at a much later date, including by contract after the settlor's death." Unif. Trust Code § 401, comment, supra, 7D U.L.A. 134. Accordingly, it is clear that, pursuant to § 45a-499v (3) and 760 Ill. Comp. Stat. Ann. 3/401 (3), Peter created a valid and enforceable charitable trust, Peter's Yellow Submarine Trust, through the exercise of his nongeneral testamentary powers of appointment.

The plaintiffs also contend that Peter's exercise of his nongeneral testamentary powers of appointment was invalid and ineffective because he appointed the proceeds of the sale of the HIHC stock to a *trust*, rather than a *trustee*. We disagree for two reasons. First, although a trustee, like trust property, is necessary for the creation of a "complete trust," a trustee "may be temporarily absent without destroying the trust or preventing its creation." 1 Restatement (Third), Trusts, supra, § 2, comment (f), p. 21; see *White* v. *Fisk*, 22 Conn. 31, 53 (1852) ("[o]ur courts have recognized the validity of charitable bequests, not only where the gifts have been to a person or corporation, having a legal capacity to take, but also to voluntary unincorporated associations existing for benevolent or charitable purposes, and have supplied these latter with trustees to receive, hold and manage the funds given for the uses designated, even though these were somewhat undefined and uncertain"); *Golstein* v. *Handley*, 390 Ill. 118, 125, 60 N.E.2d 851 (1945) ("[I]t is elementary that courts of equity will not permit a trust to fail because no trustee is designated. In such cases, the court will appoint a trustee for the purpose of carrying out the trust."); Unif. Trust Code § 401, comment, supra, 7D U.L.A. 134 ("[w]hile this section refers to transfer of property to a trustee, a trust can be created even though for a period of time no trustee is in office"). Because "[a] trust can . . . be created without notice to or acceptance [of the trust property] by a trustee"; Unif. Trust Code § 401, comment, supra, 7D U.L.A. 134; we perceive no critical distinction in this context between the appointment of trust property to a trust and the appointment of such property to a trustee.

Second, it is axiomatic that charitable trusts, which are intended to confer a public benefit on "the welfare of . . . individuals and . . . the community," must be

construed "with the utmost liberality, in order to carry out the charitable purposes of the donor." (Internal quotation marks omitted.) *Bridgeport-City Trust Co.* v. *Bridgeport Hospital*, 120 Conn. 27, 32, 179 A. 92 (1935); see *Coit* v. *Comstock*, 51 Conn. 352, 377 (1884) ("Charities are highly favored in law, and they have always received a more liberal construction than the law allows to gifts to individuals. . . . Gifts to charitable uses are highly favored in law, and will be most liberally construed in order to accomplish the intent of the donor; and trusts [that] cannot be supported in ordinary cases . . . will be established and carried into effect [when] it is to support a charitable use." (Citations omitted; internal quotation marks omitted.)); *Hinsdale* v. *Chicago City Missionary Society*, 375 Ill. 220, 231, 30 N.E.2d 657 (1940) ("[c]haritable gifts are viewed with peculiar favor by the courts, and every presumption consistent with the language contained in the instruments of gift will be employed in order to sustain them"); *Franklin* v. *Hastings*, 253 Ill. 46, 50, 97 N.E. 265 (1911) ("[Charitable] gifts are looked upon with peculiar favor by the courts, which take special care to enforce them, and every presumption consistent with the language used will be indulged to sustain them. If a testator has manifested a general intention to give to charity, the charity is regarded as the matter of substance, and the gift will be sustained, though it may not be possible to carry it out in the particular manner indicated."). Peter expressed a clear and unequivocal intent to create a charitable trust for the exclusive benefit of quadriplegics and their caregivers, and we must construe Peter's exercise of his nongeneral testamentary powers of appointment liberally to effectuate his charitable purpose. In light of the rule of liberal construction, we conclude that Peter validly and effectively exercised his nongeneral testamentary powers of appointment to direct the proceeds of the sale of the HIHC stock held in his 2002 Trust, his 2005 Trust C, and his 2011 Trust to Peter's Yellow Submarine Trust.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] December 6, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[2] Section 3.12 of the 2005 Trust C provides in relevant part: "Upon the [b]eneficiary's death . . . Trust C shall terminate; and the trustees shall distribute the then remaining property of such trust in such amounts, either outright or in further trust, to or for the benefit of any one or more persons or organizations, as the [b]eneficiary by specific reference in his or her will shall appoint to receive the same; provided, however, that this limited testamentary power of appointment . . . shall not be exercisable in favor of the [b]eneficiary, his or her creditors, his or her estate, or the creditors of his or her estate . . . ." (Emphasis in original.)

[3] Section 3.2 of the 2011 Trust provides in relevant part: "Upon the [p]rimary [b]eneficiary's death, the [p]rimary [b]eneficiary, by specific reference in his or her will, may appoint the remaining property of the [p]rimary [b]eneficiary's [t]rust in such amounts, either outright or in further trust, as follows:

"(A) If my husband, Peter M. Ziegler, is the [p]rimary [b]eneficiary, he shall have a limited power to appoint all or any portion of the property of

the [p]rimary [b]eneficiary's [t]rust to or for the benefit of any one or more persons and/or charitable organizations.

\* \* \*

"(C) Notwithstanding the foregoing, no limited power of appointment granted to the [p]rimary [b]eneficiary hereunder shall be exercisable in favor of such [p]rimary [b]eneficiary, his or her creditors, his or her estate, or the creditors of his or her estate."

[4] The sale later was rescinded pursuant to the memorandum of understanding. The rescission has no apparent bearing on this appeal.

[5] At the time she filed her complaint, Helen and Corasaniti were cotrustees of Helen's Ziegler family trusts. During the pendency of the present litigation, Helen resigned as cotrustee and removed Corasaniti as cotrustee, replacing herself and Corasaniti with Stephen D. Benjamin (Stephen) and Scott A. Weisman, respectively. Weisman and Stephen subsequently were substituted as plaintiffs on behalf of Helen's family trusts. Helen continued to remain a plaintiff in her individual capacity. We hereinafter collectively refer to Helen, Weisman, and Stephen as the plaintiffs.

[6] The descendants of the other Ziegler siblings are Renfrew Brighton, Whitney Brighton, Hadley Brighton, Kelson Brighton, Anabel Brighton, Mac Brighton, Jackie Ziegler, Cecily Ziegler, and Thomas James Story. In addition to participating in the present litigation in their individual capacities, Karl H. Ziegler, Cynthia Z. Brighton, and Renfrew Brighton also represent the interests of Peter's Yellow Submarine Trust as trustees and cotrustee, respectively, and William T. Ziegler and Karl H. Ziegler represent the interests of Trusts A and C under The William Ziegler III Revocable Trust as trustees. Corasaniti is a party to the present action as the trustee of Peter's 2002 Trust, 2005 Trust C, and 2011 Trust.

The attorney general entered an appearance in the present action pursuant to General Statutes § 3-125, which provides in relevant part that the attorney general "shall represent the public interest in the protection of any gifts, legacies or devises intended for public or charitable purposes. . . ."

We hereinafter collectively refer to these parties as the defendants.

[7] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[8] "The donor is the person who brings the power of appointment into existence," and "[t]he donee is the powerholder." 2 Restatement (Second), Property, Donative Transfers § 11.2 (1) and (2), p. 12 (1986). In this case, William Ziegler III and Marie Longner Ziegler were the donors, and Peter was the donee.

[9] The plaintiffs contend, for the first time in their reply brief, that Peter's exercise of his powers of appointment was invalid and ineffective because the charitable purpose of Peter's Yellow Submarine Trust is not apparent from the face of Peter's will and, therefore, that it is unclear whether Peter's Yellow Submarine Trust is a permissible appointee without consulting extra-testamentary evidence of Peter's intent, such as the trust instrument, in violation of the donors' requirement that Peter exercise his powers by specific reference in his will. "It is a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *Bovat* v. *Waterbury*, 258 Conn. 574, 585 n.11, 783 A.2d 1001 (2001). Arguments must be raised in an appellant's "original brief . . . so that the issue as framed . . . can be fully responded to by the appellee in its brief, and so that [an appellate court] can have the full benefit of that written argument." (Internal quotation marks omitted.) Id., 585–86 n.11. We therefore decline to address the plaintiffs' belated argument.

[10] Because Peter funded Peter's Yellow Submarine Trust through the exercise of a nongeneral testamentary power of appointment, rather than a bequest or devise, we conclude that the Uniform Testamentary Additions to Trusts Acts of Connecticut and Illinois are inapplicable to the present case. See General Statutes § 45a-260 (a) (2) ("[a] will may validly *devise* or *bequeath* property to the trustee or trustees of a trust . . . regardless of the existence, size, or character of the corpus of the trust" (emphasis added)); 755 Ill. Comp. Stat. Ann. 5/4-4 (West 2007) ("[t]he existence, size or character of the corpus of the trust is immaterial to the validity of the *bequest*" (emphasis added)). Instead, we focus our analysis on the law governing the creation of a trust via a donee's exercise of a power of appointment.

[11] Section 401 (3) of the Uniform Trust Code provides that "[a] trust may be created by . . . exercise of a power of appointment in favor of a trustee." Unif. Trust Code § 401 (3) (2000), 7D U.L.A. 134 (2018).

[12] Both § 45a-499v and 760 Ill. Comp. Stat. Ann. 3/401 (3) became effective after the commencement of the present action but are retroactively applicable to trusts created and judicial proceedings commenced before their effective date, "unless the court in which the judicial proceeding is pending finds that application of a particular provision . . . would substantially interfere with the effective conduct of the judicial proceedings or prejudice the rights of the parties." General Statutes § 45a-487t (3); see also 760 Ill. Comp. Stat. Ann. 3/1506 (4) (West Cum. Supp. 2020). For the reasons explained in the text of this opinion, the trial court correctly determined that retroactive application of these statutes does not substantially interfere with the effective conduct of the judicial proceedings or prejudice the rights of the parties because the "applicable language . . . merely confirms and codifies preexisting law; it does not authorize a new method of trust creation [or] change the rights of the parties."

———————————————————